UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES L. BROWN,

              Petitioner,

vs.                                    Case No.  2:10-cv-259-FtM-99DNF

WARDEN SHANNON, FLORIDA ATTORNEY
GENERAL,

              Respondents.
_____/

### OPINION AND ORDER

#### I. Status

James L. Brown (hereinafter "Petitioner" or "Brown") initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254.  Brown challenges his 2005 convictions, after a jury trial, for the lesser-included offense of trespass while armed (count I), and aggravated battery while using a weapon, with a special finding that Brown carried, displayed used or threatened to use a weapon (count II). [1]  Petition at 1; Exh. 1, Vol. II at 352; Exh. 2. Petitioner's sentences[2] and conviction were *per curiam* affirmed on

---

[1]Petitioner was charged by Information with first degree burglary of a structure while armed (count I), and aggravated battery with a deadly weapon or causing harm (count II).  Exh. 1, at 7-8.

[2]The trial court originally sentenced Petitioner to thirty years in prison on count II, as a prison releasee reoffender, and to concurrent terms of five years in prison on count I.  Exh. 1, VIII at 96-103.  During the pendency of his direct appeal,
(continued...)

direct appeal on August 22, 2007, but the appellate court struck certain costs awarded. Brown v. State, 963 So. 2d 342 (Fla. 2d DCA 2007); Exh. 4.   The Petition identifies three grounds alleging ineffective assistance of counsel.   See generally Petition.

Respondent filed a Response to the Petition (Doc. #19, Response), and submitted exhibits in support (Exhs. 1-15). Respondent concedes that the Petition is timely filed pursuant to 28 U.S.C. § 2244(d), and that the three grounds for relief have been exhausted in the State court.   Response at 5.   Nonetheless, Respondent contends that Petitioner is not entitled to relief in this Court because he fails to meet the threshold requirements of 28 U.S.C. § 2254(d) and (e).   Id.   Petitioner filed a Reply to the Response (Doc. #28, Reply).   This matter is ripe for review.

## II.  Applicable § 2254 Law

### A.  Deferential Review Required By AEDPA

Petitioner filed his timely Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action.   Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007);   Penry v. Johnson, 532 U.S. 782, 792 (2001);   Davis v. Jones, 506 F.3d 1325, 1331, n.9

---

[2](...continued)
appellate counsel filed Rule 3.800 motion to correct the sentence on count II.   Exh. 2 at 2-4.   The trial court granted the motion and resentenced Petitioner to 15 years, as a prison releasee reoffender, on count II.   Id.

(11th Cir. 2007). Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the

petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. 770. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior"

-4-

Supreme Court decision. Id. (citations omitted). Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. Id.

B. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. Newland, 527 F.3d at 1184. In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, <u>i.e.</u>, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688; <u>see also</u> <u>Bobby Van Hook</u>, 558 U.S. ___, 130 S. Ct. 13, 16 (2009); <u>Cullen v. Pinholster</u>, 131 S.Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." <u>Bobby Van Hook</u>, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006), <u>cert. denied</u> <u>sub nom.</u> <u>Jones v. Allen</u>, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. <u>Id.</u> A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable

professional assistance." <u>Strickland</u>, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir.), <u>cert. denied</u> sub nom. <u>Ladd v. Burton</u>, 493 U.S. 842 (1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987)).

### III. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 127 S. Ct. at 1940; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

**Ground One**

Petitioner claims trial counsel was ineffective in failing to request a jury instruction on the justifiable use of deadly force. Petition at 5. Petitioner raised this claim in his rule 3.850 Motion. Exh. 6 at 5. The postconviction court, after response by the State, summarily denied this ground, as follows:

> 7. As to Ground 1, Defendant claims he received ineffective assistance of counsel when his trial counsel failed to request a deadly force self defense jury instruction. "A criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is any evidence to support it, no matter how weak of flimsy." Gregory v. State, 937 So. 2d 180, 182 (Fla. 4th DCA 2006)(citations omitted). Counsel did argue self defense, in closing arguments, without making a distinction between deadly force and non-deadly force (T. 259, 281, 282). Testimony of Defendant and a witness established some evidence to support that argument (T. 154-165; 217-224).
>
> 8. When the evidence presented at trial does not establish, as a matter of law, whether the force used by the defendant was deadly or non-deadly, the question is a factual one to be decided by the jury, and the defendant is entitled to jury instructions on the justifiable use of both types of force. Michel v. State, 989 So. 2d 679 (Fla. 4th DCA 2008); Mathis v. State, 973 So. 2d 1153 (Fla. 1st DCA 2006), rev. denied, 954 So. 2d 1156 (Fla. 2007); see also Grimsley v. State, 939 So. 2d 123 (Fla. 2d DCA 2006). Trial counsel requested only the non-deadly force self defense jury instruction (T. 245). When the Court raised the issue of the deadly force jury instruction, trial counsel was silent, and did not request that instruction (T. 245).
>
> 9. Defense counsel's failure to request a jury instruction "has been deemed to be an 'unreasonable omission which severely prejudiced his client's case' where the error complained of 'negated the only defense put forth by trial counsel.'" Platt v. State, 697 So. 2d 989, 991 (Fla. 4th DCA 1997)(citations omitted); see also Cabrera v. State, 766 So. 2d 1131, 1134 (Fla. 2d DCA 2000). It has been held deficient performance for an

attorney to request only the deadly force jury instruction. <u>See</u> <u>Michel v. State</u>, 989 So. 2d 679 (Fla. 4th DCA 2008); <u>Lowery v. Cummings</u>, 255 Fed. Appx. 409 (C.A. 11 (Fla.) 2007). There appears to be no precedent which indicates that it is ineffective assistance of counsel to request only the non-deadly force jury instruction.

10. While counsel may have been deficient in not requesting the deadly force self defense jury instruction, Defendant has failed to meet his burden as to the prejudice prong of <u>Strickland</u>. The non-deadly force jury instruction was given, yet the jury apparently was not convinced Defendant was justified in using even non-deadly force, since it found him guilty of aggravated battery with a deadly weapon, rather than any of the lesser charges on the verdict form. It is unlikely Defendant would have been able to meet the higher burden of proof required for the deadly force jury instruction when he did not meet the less restrictive requirements of the non-deadly force instruction. Defendant has not shown prejudice, in that there is no reasonable likelihood the outcome of his trial would have been different had the deadly force instruction been given. Therefore, Ground 1 is denied.

Exh. 9 at 2-4. Here, the post conviction disposed of Petitioner's claim finding Petitioner could not demonstrate the prejudice prong of <u>Strickland</u>.

The record reveals that the following testimony and evidence was developed at trial pertinent to Petitioner's self-defense claim. Linda Jackson had been involved in a romantic relationship with Petitioner and also had a sexual relationship with Willie Powell, the victim, which Petitioner had suspected. Exh.1, Vol. I at 143-144, 226. On September 22, 2004, Jackson and Petitioner got into an argument. <u>Id.</u> at 147. Once at Powell's home, Jackson and Powell laid in bed and listened to music, until they fell asleep. <u>Id.</u> at 152. Powell awoke when the bedroom door flew open

and he saw Petitioner standing in the doorway with a hammer in his hand.  Id. at 179.  Petitioner yelled, "if I catch you two together I said I'm going to kill you," and rushed towards Powell and Jackson.  Id. at 180.  Powell raised his arms to defend himself, and received a severe gash on his arm from the claw-end of the hammer.  Id. at 181-182.  Powell attempted to ward Petitioner off by repeatedly kicking him, during which Powell sustained strikes from the hammer to his groin area.  Id.  at 183-184.  Jackson yelled out she was calling the police and Brown started to leave.  Id. at 184-85.  Powell called out to his father, "Pops," who was asleep in the next room.  Id.  When Powell entered the hallway, he saw Brown, who started to head toward the door but turn and head toward Jackson who was standing behind Pops.  Id. at 185.  As Powell came behind Brown, Brown turned around and struck Powell in the head with the hammer.  Id. at 185-86.  Brown then left the home through the front door.  Id. at 186.  After the incident, Powell learned that his front and back doors were locked, that a screen in his laundry room had been cut open, and that his phone line had been severed.  Id. at 187, 191.

    Jackson also testified at trial.  According to Jackson, she woke up when something struck her.  Id. at 156.  It was dark in the room so she could not see who struck her, and she ran out of the room.  Id. 156-57.  Jackson could hear the sounds of a struggle and heard Powell and Brown as they argued.  Id.  Jackson ran into Pop's room to get Pop's up.  Id.  at 158.  Jackson saw Powell and Brown

exit the bedroom.  Id. 159-61.  Brown was holding a hammer in his
hand and Powell had blood dripping down his head.  Id. 159, 162.
Jackson testified that Powell kept a hammer in his bed.  Id. at
163.

Brown testified on his own behalf at trial and provided a
different recitation of the facts.  According to Brown, he went to
Jackson's house but could not locate her and eventually went to
Powell's home.  Id. at 218.  Brown let himself into the home after
no one answered.  Id. at 219.  Brown opened the bedroom door, the
lights were on, and he saw Powell and Jackson lying in bed
together.  Id.  Brown testified that Powell jumped out of bed and
came towards him with a hammer.  Id.  Brown tried to grab the
hammer away from Powell, and Powell fell across the bed.  Id. at
220.  Brown "snatched" the hammer and beat Powell with it.  Id.
After Brown and Powell entered the hall, Brown attempted to wash
Powell's head off but Powell told him to leave his home.  Id. at
221.  Brown denied bringing the hammer with him.  Id.  As Brown was
walking toward the door, Powell started to spray Brown with mace so
Brown hit Powell again with the hammer.  Id. at 221-222.

The trial court charged the jury on justifiable use of non
deadly force.[3]  Id. at 292.  Although the jury was instructed on

_____

[3]The trial court charged the jury as follows:

Justifiable use of non-deadly force.

An issue in this case is whether the defendant acted in
self-defense.  It is a defense to the offense with which
(continued...)

³(...continued)
James Brown is charged if the injury to Willie Powell
resulted from the justifiable use of force not likely to
cause death or great bodily harm.   James Brown would be
justified in using force not likely to cause death or
great bodily harm against Willie Powell if the following
two facts are proved:

    1. James Brown must have reasonably
    believed that such conduct was
    necessary to defend himself against
    Willie Brown's imminent use of
    unlawful force against the defendant.

    2. The use of unlawful force by
    Willie Powell must have appeared to
    James Brown ready to take place.

The use of force not likely to cause death or
great bodily harm is not justifiable if you
find:

    1. James Brown was attempting to
    commit, committing or escaping after
    the commission of a burglary.

    2. James Brown initially provoked the
    use of force against himself. Unless
    the force asserted toward the
    defendant was so great that he
    reasonably believed that he was in
    imminent danger of death or great
    bodily harm and had exhausted every
    reasonable means to escape the danger
    other than using force not likely to
    cause death or great bodily harm to
    Willie Powell.

In deciding whether the defendant was justified
in the use of force not likely to cause death or
great bodily harm, you must judge him by the
circumstances by which he was surrounded at the
time the force was used. The danger facing the
defendant need not have been actual.   However,
to justify the use of force not likely to cause
death or great bodily harm, the appearance of

(continued...)

the use of non-deadly force, the jury nonetheless found Brown guilty of aggravated battery while using a weapon, with a special finding that Brown carried, displayed used or threatened to use a weapon. Because the jury concluded that Petitioner lacked the legal justification to use non-deadly force to defend himself against the victim, Petitioner cannot demonstrate that the jury would have concluded that he was justified to use deadly force against the victim. Additionally, the jury may have chosen to completely disregard Petitioner's testimony. Nonetheless,

---

[3](...continued)

danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed the danger was real.

In considering the issue of self-defense, you may take into account the relative physical abilities and capacities of the defendant and Willie Powell.

If, in your consideration of the issue of self-defense, you have a reasonable doubt on the question of whether or not the defendant was justified in the use of force not likely to cause death or great bodily harm, you should find the defendant not guilty.

However, if from the evidence you are convinced that the defendant was not justified in the use of force not likely to cause death or great bodily harm, then you should find him guilty if all of the elements of the charge have been proved.

Exh. 1, Vol. II at 292-94.

Petitioner has not demonstrated that there is a reasonable probability that the outcome of the verdict would have been different had the jury also been instructed with the justifiable use of deadly force jury instruction. Based upon the record and governing law, the Court finds that the state court's rejection of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, United States Supreme Court law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, the Court denies Petitioner relief on Ground One.

Ground Two

Petitioner alleges trial counsel's failure to request a complete instruction on self defense was fundamental error that rendered his performance ineffective. Petition at 6. Essentially, Petitioner argues that the same issue presented in Ground One amounted to fundamental error. Petitioner raised this claim in his Rule 3.850 motion. The state postconviction court summarily rejected this ground and stated in pertinent part:

> As to Ground 2, Defendant claims it was fundamental error for trial counsel to fail to request both self defense jury instructions. It is not fundamental error when a counsel fails to request a defense jury instruction. Muteei v. State, 708 So. 2d 626 (Fla. 3d DCA 1998); Roman v. State, 475 So. 2d 1228 (Fla. 1985). Therefore, no fundamental error exists, and Ground 2 is DENIED.

Exh. 9 at 4.

-14-

Under Florida law, fundamental error occurs in cases "where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." Sochor v. State, 619 So. 2d 285, 290 (Fla. 1993)(quoting Ray v. State, 403 So.2d 956, 960 (Fla. 1981)). "The error must amount to a denial of due process." Id. (citing Castor v. State, 365 So.2d 701 (Fla. 1978)). In the context of jury instructions, a fundamental error "goes to the foundation of a case." Id. (citing Sanford v. Rubin, 237 So. 2d 134 (Fla. 1970)). Thus, "[f]ailure to give an instruction unnecessary to prove an essential element of the crime charged is not fundamental error." Id. However, fundamental error does not include instructions that go to the "defense and not to an essential element of the crime charged." Muteei v. State, 708 So. 2d 626, 628 (Fla. 3d DCA 1998).

Controlling federal precedent requires the government to prove each element of the crime charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 361 (1970). Petitioner does not demonstrate that the state court's rejection of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, United States Supreme Court law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Consequently, the Court denies Petitioner relief on Ground Two.

## Ground Three

Petitioner contends that appellate counsel rendered ineffective assistance in failing to present on direct appeal a claim that fundamental error occurred when the trial court failed to read both self defense instructions to the jury. Petition at 8. The Second District Court of Appeal construed Petitioner's "Petition for Belated Appeal," Exh. 14, as raising this ineffective assistance of appellate claim, and denied Petitioner relief without obtaining a response from the State. Exh. 15.

In Florida, there is a strong judicial preference that ineffective assistance of trial counsel claims are to be raised in Rule 3.850 motions rather than on direct appeal. See Baker v. State, 937 So. 2d 297, 299 (Fla. 4th DCA 2006)(stating "[t]he general rule is that the adequacy of a lawyer's representation may not be raised for the first time on direct appeal."). An exception to this general rule is when both prongs of the Strickland test are "apparent on the face of the record." Grant v. State, 864 So. 2d 503, 505 (Fla. 4th DCA 2004). The Florida courts have found this exception met in cases: (1) when counsel failed to request a jury instruction regarding the *mens rea* element of the crime, Forget v. State, 782 So. 2d 410, 413 (Fla. 2d DCA 2001), or (2) when counsel failed to file a motion to dismiss and an appellate decision published four months earlier mandated dismissal, Johnson v. State, 796 So. 2d 1227, 1228-29 (Fla. 4th DCA 2001).

-16-

To prevail on an ineffective assistance of appellate counsel claim, Petitioner must be able to demonstrate that he had a viable claim for appeal. Based upon Florida precedent, there was no such apparent misconduct apparent from the record for appellate counsel to raise an ineffective assistance counsel claim on direct appeal. See Sochor v. State, 619 So. 2d at 290. Thus, based upon the record and applicable law, the Court finds that the ruling of the state court did not result in a decision that was contrary to, or involved an unreasonable application of, United States Supreme Court law, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Consequently, the Court denies Petitioner relief on Ground Three.

THEREFORE, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth herein.

2.     The **Clerk of the Court** shall enter judgment accordingly; terminate any pending motions; and close this file.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a

-17-

district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Orlando, Florida, on this ___ day of April, 2013.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

SA: hmk
Copies: All Parties of Record

-18-